# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| JOHN MICHAEL CRUZ, | : Case No. 2:23-cv-194 |
| Plaintiff, | : |
| vs. | : Judge Sarah D. Morrison |
| | : Magistrate Judge Kimberly A. Jolson |
| JAY FORSHEY, ET. AL., | : |
| Defendants. | : |

## ORDER AND REPORT AND RECOMMENDATIONS ON INITIAL REVIEW

John Michael Cruz, proceeding *in forma pauperis* and without counsel, filed an action alleging violations of his civil rights. *See* ECF No. 1; ECF No. 4. The matter is currently before the undersigned Magistrate Judge to conduct the initial screen required by law. 28 U.S.C. § 1915A(a).

For the reasons that follow, the Undersigned **RECOMMENDS** all claims against the named defendants in their official capacities be **DISMISSED with prejudice**. The Court **ORDERS** that Plaintiff shall have 30 days from the date of this order to amend his complaint against defendants in their individual capacities.

### I.     Legal Standard

Because Plaintiff is a prisoner proceeding *in forma pauperis*, seeking "redress from a governmental entity or officer or employee of a governmental entity," and is also incarcerated, the Court is required to conduct an initial screen of his Complaint. 28 U.S.C. §§ 1915(e)(2), 1915A(a), (b). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b).

A complaint is frivolous if the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328–29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or 'wholly incredible.'" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional," *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010), or "clearly irrational or wholly incredible." *Ruiz v. Hofbauer*, 325 F. App'x 427, 429–30 (6th Cir. 2009) (citing *Denton*, 504 U.S. at 33).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint that consists of mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing

Fed. R. Civ. P. 8(f)). Even with such a liberal construction, however, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## II. Background

Plaintiff seeks relief under 42 U.S.C. § 1983, naming Jay Forshey, Warden at Noble Correctional Institution ("NCI") and an unnamed "Head of the Medical Unit at NCI" as defendants. ECF No. 1 at PageID 4. Plaintiff's Complaint addresses a single issue: the alleged denial of access to a continuous positive air pressure ("CPAP") machine while housed at NCI for a period of six months. *Id.* at PageID 5. Specifically, Plaintiff alleges that prior to his incarceration he participated in a study where "[i]t was discovered that [he] stopped breathing 55 times in an hour and was put on a CPAP machine." *Id.* When Plaintiff was initially incarcerated, he was housed at "county," where he was given a CPAP machine, but upon transfer to "CRC" he was refused access to a CPAP and was told he had to wait until he was transferred to NCI to receive one. *Id.* After a month without CPAP access at CRC, Plaintiff was transferred to NCI but was denied access again, until he "finally received the CPAP" after "six months of suffering," which when received, was not properly set and required adjusting, resulting in additional time without it. *Id.*

As an exhibit to his Complaint, Plaintiff attaches a copy of various complaints made to prison officials at NCI regarding the CPAP machine beginning on April 29, 2022, through December 5, 2022 (the "Exhibit"), which are summarized as follows:

- April 29, 2022 – Subject line: Warden. Form Type: Kite. Urgent Status: No.

Plaintiff's Narrative: Plaintiff seeks to "speed up the process" of getting a CPAP machine, indicating he has "severe sleep apnea," that he wakes up "countless times throughout the night choking in [his] sleep, and that he is aware "they are waiting for a respond [sic] back from aultman north in canton for [his] sleep study report" but that a CPAP machine is important to his health and he is unsure how long he can "keep going on with this."

Response from Jessica Perrin, dated May 9, 2022: "You have already kited and received a response from medical. They have requested your medical information so they can assist you with this."

- August 3, 2022 – Subject line: Health Care. Form Type: Informal Complaint. Urgent Status: No.

Plaintiff's Narrative: Plaintiff indicates that he has been incarcerated since "march" and has been waiting for a CPAP machine since then, that he had a sleep study performed where he stops breathing 55 times per hour, and that he needs a CPAP machine as being without it is "effecting [his] health everynight," that he had an order for a CPAP machine since June 16, 2022 but has yet to receive one. He also explained that he had a follow up appointment with a doctor on July 26, 2022, and the doctor called to check the status of the CPAP machine and told him there was no back order issues with obtaining one.

Response from Jonathan Pittman, dated August 4, 2022: Indicating Plaintiff's outside medical records were received June 21, 2022, and a CPAP was ordered that day. Pittman indicated he placed a new order August 4, 2022, in response to Plaintiff's message, "to evaluate if machines still backordered," and noting Plaintiff will be "passed to medical immediately upon arrival of machine to NCI" and to "continue to follow up for any medical concerns by completing health services request form."

- December 1, 2022 – Subject line: Health Care. Form Type: Grievance. Urgent Status: No.

Plaintiff's Narrative: "[T]hey say there is a back order on [CPAP] machines . . . [but] I cant even get a wedge to try and help with my sleep apnea. . . I wake up choking and I don't get good sleep. [I]snt there anything you could do to help a little until I get a machine line a wedge? [I]ts been 6 months [I] have been waiting."

Response from Kaila Johnson, dated December 7, 2022: ORDC does not allow wedge distribution but "[t]he pharmacy was contacted and CPAP machine and mask should be delivered to NCI today."

Plaintiff's Response, dated December 12, 2022: "[I] received my machine but they havnt [sic] even set it to the right setting per my sleep study."

4

      Response from Evelyn Obeng, dated December 19, 2022: Indicating the Office of the Inspector of the Institutional Services is in receipt of his grievance, that Obeng began an investigation by interviewing medical personnel at NCI, performed a review of his medical file, and on December 15, 2022, contacted "HCA Pittman" regarding the CPAP settings and escorted Plaintiff to medical for Pittman to make the proper setting adjustments. Obeng notes "[t]here is sufficient evidence to support your claim that medical didn't set your CPAP machine to your sleep study. Your grievance is granted. Medical was addressed."

- December 5, 2022 – Subject line: Warden. Form Type: Grievance Against the Warden. Urgent Status: No.

      Plaintiff's Narrative: Indicating he has been attempting to address the issue of his sleep apnea but has received "no results" for 6 months, that he is suffering and that every night he struggles, and that while he is waiting for a CPAP machine, he would like to get a "wedge" or some other type of assistance until the machine is received. Plaintiff asserted that he feels like his "health care rights are being violated and the warden has no concern for it."

      Response from Chris Lambert, dated December 5, 2022: "Upon review of your complaint . . . I find you have incorrectly filed your complaint as a Direct Grievance" as the grievance does not show the warden or inspector violated policy, rule, or statute. Lambert instructed Plaintiff that his complaint should be filed as an "informal complaint (ICR) with the area supervisor – in this case the NCI Medical Department/Healthcare Administrator" and that as a result his grievance was denied. Lambert went on to instruct Plaintiff how to "escalate" his grievance if he was not satisfied with Lambert's response.

ECF No. 1-1.

      In addition, the Exhibit contains the following handwritten notes with the heading "Other Kites" indicating on April 29 he sent a kite to "medical" requesting medical documents, on May 26 he sent a kite to "medical" followed by "said the resent Request to Aultman," on June 6, he sent a kite to "medical" indicating Plaintiff contacted Aultman for their fax number, gave the Aultman fax number to "medical" and that medical resent a request for Plaintiff's medical records to Aultman, on July 25 he sent a kite to "medical" with the note "addressed my need," and he sent a kite to "medical" on November 11, with the note "addressed my concerns." *Id.* at PageID 9.

      As Plaintiff does not cite to any specific constitutional or federal law under which his claim

is brought, the Court liberally construes Plaintiff's claims against Forshey and the Head of the Medical Unit as a claim for deliberate indifference to medical needs under the Eighth Amendment.[1] Plaintiff seeks $100,000 for mental, physical, and emotional distress damages. *Id.* at 5–6.

### III.  Recommendations Based on Initial Review of Plaintiff's Complaint

Although Plaintiff does not state whether he seeks to sue Forshey and the Head of the Medical Unit in their individual capacities, official capacities, or both, s*ee* ECF No. 1-1 at PAGEID 4 (naming Forshey and the Head of the Medical Unit at NCI as defendants), for purposes of this initial review, the Court will consider Plaintiff's claims against all defendants under both an official and individual capacity.

"While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). It follows that, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity" and is therefore no different from a suit against the state itself. *Matthews v. Jones*, 35 F.3d 1046, 1049

---

[1] While unclear from the allegations in the Complaint, to the extent Plaintiff intends to bring a claim that defendants failed to comply with an administrative rule or prison policy or follow grievance procedures when failing to timely provide him with a CPAP machine, such a claim does not itself give rise to a § 1983 claim. *See Laney v. Farley,* 501 F.3d 577, 581 n. 2 (6th Cir. 2007) ("[A] § 1983 claim may not be based upon a violation of state procedure that does not violate federal law."); *Smith v. Freland,* 954 F.2d 343, 347–48 (6th Cir.1992); *Barber v. City of Salem,* 953 F.2d 232, 240 (6th Cir.1992); *McVeigh v. Bartlett,* No. 94–23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (policy directive does not create a protectable liberty interest); *see also Young v. Hodge*, No. 3:12-0009, 2012 WL 5494892, at *7 (M.D. Tenn. Nov. 13, 2012) (finding there are "no constitutional right to an effective, fair, or properly functioning prison grievance procedure, and a prison inmate does not have a constitutionally protected interest in prison grievance procedures), report and recommendation adopted, No. 3:12-CV-0009, 2013 WL 440964 (M.D. Tenn. Feb. 5, 2013) (collecting cases). Thus, even if Plaintiff had named any policies or grievance procedures under which he sought relief, he cannot state a claim under § 1983 by only alleging defendants violated NCI policies or failed to provide an adequate grievance procedure without more.

(6th Cir. 1994) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989)). As both defendants are employed at NCI they are employed by the state of Ohio.[2] Therefore, any claims against defendants in their official capacity would be construed as claims against the State of Ohio.

Where "state officials are being sued for money damages in their official capacity, the Eleventh Amendment is squarely in play as a bar to suit in federal court, at least to the extent that [p]laintiffs are bringing claims under 42 U.S.C. § 1983." *Lee Testing & Eng'g, Inc. v. Ohio Dep't of Transp.,* 855 F. Supp. 2d 722, 725 (S.D. Ohio 2012).

> It is well settled that 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity. *See generally Quern v. Jordan,* 440 U.S. 332 (1979). And the State of Ohio has not waived its immunity from suits for money damages, except to the extent that such claims are allowed to be brought in the Court of Claims of Ohio. *See* R.C. 2743.03. Ohio has not waived its Eleventh Amendment immunity from suits for money damages in federal court. *See Turker v. Ohio Dept. of Rehab. and Corrections,* 157 F.3d 453, 457 (6th Cir.1998).

*Id.* at 725–26.

Accordingly, as Plaintiff seeks only monetary damages, to the extent Plaintiff intended to sue either defendant in their official capacity, the Undersigned **RECOMMENDS** all claims against all defendants *in their official capacities* be **DISMISSED with prejudice** for want of federal jurisdiction.

Regarding potential individual capacity claims, the Undersigned finds that Plaintiff's Complaint is deficient and requires amendment to proceed and shall allow Plaintiff 30 days in which to do so for the reasons set forth in the following section.

### IV. Order Based on Initial Review

To state a claim under 42 U.S.C. § 1983, a plaintiff must: (1) allege a violation of a federal

---

[2] NCI is part of the Ohio Department of Rehabilitation and Correction's network of facilities. *See* Ohio Department of Rehabilitation and Correction, *Facilities*, available at: https://drc.ohio.gov/about/facilities/noble-correctional/noble-correctional (last accessed Apr. 27, 2023).

7

constitutional right or federal law; and (2) must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In addition to alleging a violation of federal constitutional or statutory law by a person acting under color of law, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the alleged injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Here, Plaintiff's Complaint, which the Court construes as alleging a claim of deliberate indifference to medical needs in violation of the Eighth Amendment, suffers from several defects under § 1983, requiring amendment to proceed.

Under the Eighth Amendment's prohibition against cruel and unusual punishment, prison officials are forbidden from "'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [ ] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle,* 429 U.S. at 104). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). A claim of deliberate indifference to medical needs is described as carrying both an objective and subjective component, both of which must be established by a plaintiff: (1) a sufficiently grave deprivation of a basic human need (the objective component); and (2) a sufficiently culpable state of mind on behalf of the person acting under color of state law (the subjective component). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

In relation to the objective component, because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *See Estelle,* 429 U.S., at 103–04.

A sufficiently serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). Serious medical needs have been found when a failure to treat an injury or condition could result in "further significant injury or the unnecessary and wanton infliction of pain." *Ford v. LeMire*, No. 03-CV-10176-BC, 2004 WL 1234137, at *4 (E.D. Mich. June 1, 2004) (internal quotations omitted) (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds by WMX Technologies v. Miller,* 104 F.3d 1133 (9th Cir. 1997)).

Here, Plaintiff alleges he requested a CPAP machine deemed necessary by a medical provider (as it had been observed that Plaintiff stopped breathing up to "55 times per night"). ECF No. 1 at Page ID 5; ECF No. 1-1 at PageID 14.  As courts in this jurisdiction have held "a request for a CPAP due to sleep apnea is an objectively serious medical need," *see Boone v. Heyns*, No. 12-14098, 2020 WL 2832251, at *9 (E.D. Mich. May 31, 2020), for purposes of initial review, Plaintiff's allegations meet the objective component.

The subjective element requires a showing that prison officials have "a sufficiently culpable state of mind in denying medical care." *Id.* (internal citation and quotation omitted). Although "it is not necessary that the prison officials consciously sought to inflict pain by withholding treatment," *Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir. 1988), "[m]ere negligence is not sufficient," *Hicks v. Frey,* 992 F.2d 1450, 1455 (6th Cir. 1993).  Rather, the plaintiff must "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001).  In other words, "[t]he

official's conduct 'must demonstrate deliberateness tantamount to an intent to punish.'" *Hicks*, 992 F.2d at 1455 (quoting *Molton*, 839 F.2d at 243).

It is under this subjective component where Plaintiff's allegations are deficient. In the Exhibit, Plaintiff establishes he made various NCI staff members aware of his need for a CPAP machine, that the CPAP was necessary due to a prior diagnosis, that without the CPAP he awakened multiple times per night "choking" and struggling to sleep and alleges that his requests were either ignored or not adequately addressed for roughly six months.[3] ECF No. 1 at Page ID 5; ECF No. 1-1 at PageID 14. However, he names none of the NCI staff members he corresponded with about the CPAP machine as defendants, instead naming Warden Forshey and the unnamed head of the NCI Medical Unit as the only defendants, but then fails to allege a single instance of specific wrongful conduct performed by either of them.[4] *See* ECF Nos. 1, 1-1. As such, there is no information to allow the Court to determine that (or how) either Forshey or the Medical Unit Head allegedly violated Plaintiff's rights.

Identifying who harmed the plaintiff and how they did so is a "basic pleading essential" required to state a claim. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) (courts "are not required to conjure up allegations not pleaded or guess at the nature of an argument."). "The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege...facts that demonstrate what *each* defendant did that violated

---

[3] Plaintiff's Complaint contains no further allegations regarding the CPAP machine once received six months after his initial request, aside from the settings needing adjustment upon initial receipt. *See* ECF Nos. 1, 1-1.

[4] In the Exhibit to the Complaint, Plaintiff describes conversations discussing his need for a CPAP machine, his medical difficulties due to not having access to one, and his prior sleep study results and diagnosis with several NCI employees that are but not named as defendants. ECF No. 1-1. Because these individuals are not named as defendants in the Complaint and are not parties to this case, the Court declines to analyze Plaintiffs statements with respect to these individuals unless and until Plaintiff amends his Complaint to formally include them.

10

the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis in original). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–57 (1978)). Thus, "[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints," *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich. 2012), as "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2021) (internal citation and quotations omitted).

As at this stage of review Plaintiff's Complaint meets the objective pleading standard for a deliberate indifference to medical needs claim but fails to connect the named defendants with the claims made. Dismissal is appropriate where a plaintiff wholly fails to link defendants to the violations alleged as a court cannot attempt to "match particular defendants with particular allegations where the plaintiff has failed to do so[.]" *Culberson v. Franklin Cnty. Corr.*, No. 2:22-CV-3671, 2022 WL 17600955, at *3 (S.D. Ohio Dec. 13, 2022). Courts may instead, however, grant *sua sponte* leave to amend. *See Carpenter v. Kaiser Foundation Health Plan of Ohio, Inc.*, No. 04CV1689, 2005 WL 1123611, at *5, 7 (N.D. Ohio May 11, 2005). The Court concludes the better course is to allow Plaintiff to amend his Complaint to clarify his allegations to meet the subjective component. Specifically, to the extent Plaintiff alleges claims against Forshey and the unnamed head of the NCI Medical Unit, he must amend his complaint to include sufficient facts establishing the individual involvement of both Forshey and the unnamed head of the NCI Medical Unit to Plaintiff's claims, as well as any other additional defendants Plaintiff may add upon

11

amendment. *See Comstock*, 273 F.3d at 703.

For these reasons, this Court **ORDERS** Plaintiff to amend all claims against all defendants *in their individual capacities*.

V. **Conclusion**

Based on the foregoing, **IT IS THEREFORE ORDERED THAT:** Plaintiff is granted leave to amend the Complaint within **30 days** of this Order. To the extent Plaintiff fails to file an amended complaint within the allotted time or seek an extension of time in which to comply, the Court will recommend dismissal of the Complaint for failure to state a claim.

Further, the Undersigned **RECOMMENDS** that all remaining claims against all defendants in their official capacities be **DISMISSED with prejudice**.

The Undersigned further **RECOMMENDS** that the District Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of an Order adopting this Report and Recommendations would not be taken in good faith, and consequently, leave for Plaintiff to appeal *in forma pauperis* should be denied

**Procedure on Objections to Report and Recommendation**

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO RECOMMENDED.**


Date: May 17, 2023                                                   /s/ Kimberly A. Jolson
                                                                     KIMBERLY A. JOLSON
                                                                     UNITED STATES MAGISTRATE JUDGE